**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**MANUEL DEJESUS PEREZ ALVAREZ,**
**Reg #99173-179**                                                                              **PLAINTIFF**

**V.**                                       **CASE NO. 4:17-CV-731-BSM-BD**

**UNITED STATES,** *et al*.                                                    **DEFENDANTS**

<u>**RECOMMENDED DISPOSITION**</u>

**I.**      <u>**Procedures for Filing Objections**</u>**:**

      This Recommended Disposition ("Recommendation") has been sent to Chief

Judge Brian S. Miller. Any party may file written objections with the Clerk of Court. To

be considered, objections must be filed within 14 days. Objections should be specific and

should include the factual or legal basis for the objection.

      If the parties do not file objections, they risk waiving the right to appeal questions

of fact. And, if no objections are filed, Chief Judge Miller can adopt this

Recommendation without independently reviewing the record.

**II.**      <u>**Procedural Background**</u>**:**

      Plaintiff Manuel DeJesus Perez Alvarez is currently an inmate at the Beaumont

Medium Federal Correctional Institution ("BM-FCI") in Beaumont, Texas. Mr. Perez

Alvarez alleges that he fell and injured his ankle while incarcerated at the Forrest City

Medium Federal Correctional Institution ("FC-FCI") on September 15, 2015, as a result

of negligence on the part of prison employees. (Docket entry #1) He states that he was

transferred "soon after [his] accident" to BM-FCI. (#1)

Mr. Perez Alvarez initially sued Gene Beasley, who was Warden at FC-FCI when Mr. Perez Alvarez fell, and Dallas Jones, the Warden at BM-FCI. Mr. Perez Alvarez also sued the United States of America ("United States") under the Federal Tort Claims Act ("FTCA") for negligence at both FC-FCI and BM-FCI. He also stated supplemental Texas state-law claims for medical malpractice and negligence arising from the medical treatment he received from Correct Care Solutions ("CCS") after he was transferred to BM-FCI.[1]  (#1)

The Court granted summary judgment to Defendants Beasley and Jones because Mr. Perez Alvarez failed to his exhaust administrative remedies against these defendants prior to filing suit. The United States and CCS, however, remain defendants in the case. (#38)

Before the United States filed its motion for summary judgment, CCS moved to dismiss Mr. Perez Alvarez's state-law claims against it. (#40) In its motion to dismiss, CCS asserted, in error, that all claims against other defendants had been dismissed; and it urged the Court to exercise its discretion not to assume supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), because the claims remaining against CCS are Texas state-law claims. (#41)

---

[1] Mr. Perez Alvarez's *Bivens* claims, FTCA claims, and state law claims against CCS for medical care he received at FC-FCC have been dismissed. (#29) His only remaining claims against CCS arise from the medical care he received at BM-FCI.

2

The United States then moved for summary judgment on all claims against it. (#42) Mr. Perez Alvarez has not responded to either motion and the time for doing so has passed.

**III.    The United States of America's Motion for Summary Judgment:**

A.    Undisputed Facts

Mr. Perez Alvarez is 43 years old. (#44-1 at p. 1) He was an inmate at FC-FCI from August 1, 2014 until February 4, 2016. According to Mr. Perez Alvarez, medical care providers failed to appropriately treat his left ankle injury after he fell from his bunk bed. (#1) Specifically, he claims his injury was misdiagnosed as a tendon injury because medical providers at FC-FCI did not obtain a medical resonance image ("MRI"). (#1 at pp. 1-3) CCS, a contract medical provider, assumed Mr. Perez Alvarez's medical care after he was transferred to BM-FCI. (#13) Mr. Perez Alvarez asserts he did not receive proper diagnoses or care at BM-FCI until January 30, 2017, when an MRI revealed an arthritic cyst in his ankle. (#1 at p. 2) He claims he now experiences pain and must use a cane or wheelchair for ambulation. (*Id.*)

Upon his arrival to FC-FCI, Mr. Perez Alvarez had a medical history of hypertension and glaucoma. (#44-1, Attachment 24) Joseph Capps, M.D., treated Mr. Perez Alvarez at the chronic care clinic and noted that Mr. Perez Alvarez also had gastroesophageal reflux disease and intermittent chest pain. (*Id.*)

On September 16, 2015, medical providers examined Mr. Perez Alvarez, who came to health services complaining that he had fallen the night before trying to climb

from his top bunk and had injured his ankle. (#44-1 at pp. 1-2, Attachment 2 at p. 1) The nurse examined Mr. Perez Alvarez and noted no redness or swelling to the ankle. He estimated his pain as a 6 out of 10. She provided Mr. Perez Alvarez acetaminophen (Tylenol) and placed orders for an x-ray. (*Id*. at p. 2) Later that day, when health services requested that Mr. Perez Alvarez be brought for the x-ray, he refused. (#44-1 at p. 2, Attachment 3) Mr. Perez Alvarez signed a Medical Treatment Refusal indicating that he understood that his refusal could cause a delay in care and/or further tissue damage. (*Id*. at Attachment 4)

On October 14, 2015, Mr. Perez Alvarez returned to health services complaining of pain in his ankle related to the fall. P. Morehart, APN, prescribed ibuprofen and ordered x-rays. (*Id*. at Attachment 5) The x-ray of Mr. Perez Alvarez's left foot, taken October 21, 2015, was negative for fracture or dislocation but did show an os peroneum[2] and a small posterior calcaneal enthesophyte.[3] (*Id*. at p. 2, Attachment 6) Neither the os peroneum nor the calcaneal enthesophyte could have been caused by a fall from a bunk or any other acute injury. (*Id*. at p. 3) A fall can exacerbate pain or discomfort, however,

---

[2]An os peroneum is a small accessory bone located at the lateral plantar aspect of the cuboid within the substance of the peroneus longus tendon as it arches around the cuboid. It is a common anatomical variant. Not all people have an os peroneum bone. (#44-1 at p. 2)

[3]A plantar calcaneal enthesophyte is a very small outgrowth of bone that happens where a tendon inserts into the heel bone on the bottom of the foot. It is more commonly known as a bone spur and is usually caused by inflammation associated with osteoarthritis or tendonitis. (#44-1 at p. 2)

associated with either condition. (*Id*.) Mr. Perez Alvarez continued to be treated with pain medication.

Nurse Morehart reviewed Mr. Perez Alvarez's medical chart on November 4, 2015 and noted findings on the x-ray that could have contributed to Mr. Perez Alvarez's left ankle pain. She wrote that she would discuss strengthening exercises and using over-the-counter pain medication for pain control with Mr. Perez Alvarez. (*Id*. at p. 2, Attachment 7)

During a sick-call encounter on November 18, 2015, Nurse Morehart prescribed ibuprofen and noted that a referral to podiatry might be indicated to assess whether Mr. Perez Alvarez needs wider shoes. Nurse Morehart gave Mr. Perez Alvarez a temporary soft-shoe pass. (*Id*. at p. 3, Attachment 8 at p. 3)

Dr. Capps examined Mr. Perez Alvarez on December 23, 2015. He initially ordered a repeat of the ankle x-ray because the prior report had noted a corrupted image; but the second x-ray was ultimately cancelled. (*Id*. at p. 3, Attachment 9 at p. 3, Attachment 10) Dr. Capps prescribed naproxen for pain. (*Id*. at p. 3, Attachment 9 at p. 3) Mr. Perez Alvarez was not seen again by Health Services at FC-FCI. (#44-1 at p. 3)

While at a BOP facility in Oklahoma City in transit to BM-FCI, Mr. Perez Alvarez was prescribed acetaminophen for ankle pain. (*Id*. at p. 3, Attachment 11, p. 1) Alyssa Lahaye, LVN, performed Mr. Perez Alvarez's initial health screening at BM-FCI on February 8, 2016. She renewed his prescription for acetaminophen and added a prescription for naproxen. (*Id*. at p. 3, Attachment 12 at pp. 4-5)

On February 11, 2016, Sreedhar Polavarapu, M.D., evaluated Mr. Perez Alvarez at BM-FCI. Mr. Perez Alvarez complained that his "[l]eft achilles/ankle got messed up" after falling from his bunk at FC-FCI. (Attachment 12 at p. 1 of notes from encounter dated February 11, 2016) Dr. Polavarapu prescribed oxcarbazepine and naproxen for pain and a physical therapy consult. (*Id*. at p. 4, Attachment 12 at pp. 3-5 of notes from encounter dated February 11, 2016)

Mr. Perez Alvarez presented to health services on February 25, 2016, complaining that his foot hurt. The nurse noted that his x-rays "show nothing significant." (*Id*. at p. 4, Attachment 13 at p. 2)

On March 3, 2016, Danielle Files, a physical therapist, evaluated Mr. Perez Alvarez. (*Id*. at p. 4, Attachment 14) Mr. Perez Alvarez complained that he had been walking a great deal because of the transfer and claimed his ankle hurt more than usual. (*Id*. at p. 4, Attachment 14 at p. 1) Ms. Files diagnosed an Achilles tendon injury and possible tendonitis. Mr. Perez Alvarez requested a cane, and she provided him one. He was ordered to rest and return for a follow-up in two weeks. (*Id*. at p. 4, Attachment 14 at p. 2)

On April 26, 2016, while Mr. Perez Alvarez was in transit on a federal writ, he complained that naproxen was upsetting his stomach; and his medication was changed to meloxicam. (*Id*. at p. 4, Attachment 15 at pp. 1-2)

Dr. Polavarapu saw Mr. Perez Alvarez for a 14-day follow-up on May 3, 2016, and prescribed oxcarbazepine for pain management. (*Id*. at p. 5, Attachment 17 at p. 4)

On June 30, 2016, Mr. Perez Alvarez complained his most recent medication had not relieved his pain. The nurse submitted a request for the doctor to adjust his medication. (*Id*. at p. 5, Attachment 18) On July 21, 2016, S. Henderson, NP, evaluated Mr. Perez Alvarez, for complaints of left ankle pain. (*Id*. at p. 5, Attachment 19 at p. 1) Nurse Henderson submitted a consultation for an MRI. (*Id*. at p. 5, Attachment 19 at p. 2)

On October 20, 2016, Mr. Perez Alvarez reported to health services and asked for more frequent pain medications. His prescriptions for oxcarbazepine and meloxicam were updated. (*Id*. at p. 5, Attachment 21)

In an administrative note dated January 17, 2017, Dr. Polavarapu noted that Mr. Perez Alvarez's left ankle pain had not improved, and he ordered an MRI. (*Id*. at p. 5, Attachment 22)

The report of the MRI performed on January 27, 2017 indicates: "1. Minimal narrowing at the ankle mortise with 7-mm arthritic cyst noted at the subarticular portion of the distal medial tibia. No fracture identified. The talar dome appears intact. 2. Ligaments and tendons appear intact with no acute disruption present." (*Id*. at pp. 5-6, Attachment 23) Dr. Polavarapu reviewed the results of the MRI on January 31, 2017. (*Id*. at Attachment 23)

B.    Summary Judgment Standard

Summary judgment means that the court rules in favor of a party without the need for a trial. A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine

dispute as to any fact that is important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Here, the United States has moved for summary judgment, so it must produce evidence showing that there is no real dispute about any fact that is important enough to make a difference in how the case is decided. If it meets this burden, Mr. Perez Alvarez must respond by producing evidence that contradicts that evidence. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If Mr. Perez Alvarez does not come forward with enough evidence to show that there is a real dispute, the Court must grant summary judgment in favor in favor of the United States; and there will be no trial. *Celotex Corp.*, 447 U.S. at 322–23.

    C.    Discussion

        1.    Medical Negligence

Because there is no general federal common law, claims brought under the FTCA are governed by the substantive law of the state where the alleged tortious acts occurred. 28 U.S.C. § 1346(b); *Johnson v. United States*, 534 F.3d 958, 963 (8th Cir. 2008); *Little White Man v. United States*, 446 F.3d 832, 835 (8th Cir. 2006). Mr. Perez Alvarez's FTCA medical negligence claim against the United States focuses on medical care he received in Forrest City, Arkansas; thus, Arkansas tort law governs.

Under Arkansas law, a plaintiff in a medical negligence action must prove: (1) the applicable standard of care; (2) that the medical provider failed to act in accordance with

that standard; and (3) that such failure was the proximate cause of the plaintiff's injuries. ARK. CODE ANN. § 16-114-206; *Worden v. Kirchner*, 2013 Ark. 509, at 6. A plaintiff bears the burden of proving these three elements by expert testimony, except in limited circumstances. ARK. CODE ANN. § 16-114-206(a), partially invalidated by *Broussard v. St. Edward Mercy Health System, Inc*., 2012 Ark. 14, at 7-8 (holding the statute's requirement for expert medical testimony by medical provider in same specialty as defendant an unconstitutional violation of separation of powers).

The one exception to the expert requirement applies in cases where the asserted negligence is so apparent that it can be deduced by those without expertise in the medical field. ARK. CODE ANN. § 16-114-206(a). In most cases, however, expert medical testimony is necessary because the allegations of medical negligence usually involve matters that are not within the general knowledge of lay jurors. *Mitchell v. Lincoln*, 366 Ark. 592, 599 (2006) (citations omitted).

Here, Mr. Perez Alvarez complains that employees of the FC-FCI negligently failed to treat his left ankle after he sustained a fall from his bunk-bed. (#1) Specifically, he claims medical providers at FC-FCI misdiagnosed his injury as a tendon injury because they did not obtain an MRI. In its motion for summary judgment, the government argues that, because Mr. Perez Alvarez has not retained a medical expert, he is not able to meet his burden of proof.

Given the undisputed circumstances in this case, the negligence Mr. Perez Alvarez asserts is not a matter of common knowledge, and the Arkansas statute requires him to

support his claim with expert testimony. His failure to produce an expert opinion as to the government's negligence is fatal to his claim. See *Haas v. Starnes*, 323 Ark. 263, 268-69 (1996) (explaining that the common knowledge exception applies to obvious cases of negligence such as "a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it").

Even if a lay person could speculate, without the help of an expert, that the symptoms Mr. Perez Alvarez reported to medical providers at FC-FCI warranted pain medication and an x-ray, his medical negligence claim would fail because the FC-FCI medical providers administered this treatment to Mr. Perez Alvarez. Providers prescribed acetaminophen for pain and ordered an x-ray. As noted, the medical providers offered Mr. Perez Alvarez an x-ray on the day he first reported pain, but he later refused the x-ray and signed an acknowledgement that his refusal to submit to the x-ray might result in a delay in treatment and further damage.

It is undisputed that Mr. Perez Alvarez did not undergo an MRI on his left ankle until January 27, 2017, and he claims to have suffered pain for at least 14 months prior to that date. Even so, "pain, standing alone, is insufficient to establish a deviation from the appropriate standard of care." *Namer v. United States of America*, 2014 WL 3689794, *4 (E.D. Ark. 2014). Mr. Perez Alvarez must prove "that he suffered [pain] in excess of what the appropriate standard of care allows." *Id*. Even with expert testimony, the Court concludes that it would be impossible for Mr. Perez Alvarez to meet his burden of proof given the undisputed facts.

In support of its motion, the United States has produced the affidavit of TeCora Ballom, D.O., a Regional Medical Director for the South Central Region of the Federal Bureau of Prisons ("BOP") and Acting Clinical Director for FC-FCI. Dr. Ballom reviewed Mr. Perez Alvarez's medical records and testified that an arthritic cyst and a bone spur are benign, incidental findings on a radiographic study. Dr. Ballom also stated the discomfort caused by the arthritic cyst can be managed conservatively with medication; and a bone spur is usually treated conservatively. (#44-1 at p. 6) Dr. Ballom concluded that FC-FCI provided appropriate medical care to Mr. Perez Alvarez by conservatively managing his left ankle pain with medication. (*Id*.) Mr. Perez Alvarez has offered nothing to refute Dr. Ballom's testimony.

Mr. Perez Alvarez also lacks proof in this case that the care he received by medical providers at FC-FCI caused his injury because of a deviation in the standard of care. Arkansas's medical malpractice statute requires that Mr. Perez Alvarez establish how any deviation in treatment or misdiagnosis caused him either new damage to his ankle or pain that he would not have otherwise experienced. ARK. CODE ANN. § 16-114-206(a)(3).

When Mr. Perez Alvarez consented to an x-ray, it revealed an os peroneum and a bone spur. Dr. Ballom's unrefuted testimony establishes that neither of these conditions could have originated from a fall from a bunk-bed or other trauma. (#44-1 at p. 3) Further, his fall could not have caused the arthritic cyst discovered on the MRI, although the fall might have contributed to his discomfort. (#44-1 at p. 6) Accordingly, even if an

11

MRI had been performed earlier, there is no evidence in the record indicating his medical treatment would or should have been any different from the treatment he received.

Mr. Perez Alvarez has failed to come forward with any evidence showing that the pain he suffered was caused by the FC-FCI medical department's deviation from the standard of care. The negligence he alleges in this case is not a matter that would fall within a jury's common knowledge. But even if it were, it would be impossible for Mr. Perez Alvarez to meet his burden of proof given the undisputed facts in this case indicating that Mr. Perez Alvarez received regular care and treatment of his left ankle by the medical staff at FC-FCI. Accordingly, the Defendant is entitled to judgment as a matter of law.

## 2.    FTCA Claim of Negligence

Mr. Perez Alvarez complains that the United States is negligent because the bunk-bed he slept in at FC-FCI did not have a ladder. (#1 at pp. 2, 6) Generally, federal courts lack jurisdiction to hear claims against the United States because of sovereign immunity. *Barnes v. United States*, 448 F.3d 1065, 1066 (8th Cir. 2006). Under the FTCA, however, the federal government waives immunity in certain tort suits and allows the United States to be liable, "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Under the FTCA, the law of the state where the alleged tort occurred controls. *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 743 (8th Cir. 2009). Here, because all Mr. Perez Alvarez's claim relates to his incarceration at FC-FCI, Arkansas law applies.

12

The limited waiver found in the FTCA is subject to certain exceptions. Relevant here is the "discretionary function" exception, which absolves the United States of liability for "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency. . .." 28 U.S.C. § 2680(a). The exception applies where government officials must exercise their discretion in choosing how to act because there is no statute or regulation that requires a specific course of action, and that discretion is guided by competing public policy considerations. *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). To "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," the plaintiff must rebut a "presum[ption] that the [government] agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 323, 324 (1991).

Federal law provides that the BOP must, "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). While this provision imposes a general duty to house and care for prisoners, the statute does not mandate a specific way that duty must be carried out. See *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997). Thus, FTCA complaints of overcrowding, under-staffing, and issues pertaining to a prisoner's living quarters are

13

routinely found to be excluded from the FTCA by the discretionary function exception. *See*, *e.g.*, *Dykstra*, 140 F.3d at 796 (decisions about placement and classification of prisoners are within discretionary function exception); *Cohen*, 151 F.3d at 1343 (same); *Rodriguez v. United States*, 415 F. App'x 143 (11th Cir. 2011) (decisions regarding exercise equipment provided to prison are discretionary); *Santos v. United States*, 2006 WL 1050512, at *2 (5th Cir. 2006) (implementation of non-smoking regulations were within discretion of prison administrators); *Antonelli v. Crow*, No. 08–261–GFVT, 2012 WL 4215024, at *3 (E.D. Ky. Sept.19, 2012) (dismissing FTCA claims alleging overcrowding, "fair" wages, problems with disbursements from his inmate trust account); *Manning v. Flock*, 2012 WL 1078227, at *16 (M.D. Pa. 2012) (prison's decision about accommodating the needs of prisoners with limited mobility within discretionary function exception) *Lineberry v. United States*, No. 3:08–CV–0597–G, 2009 WL 763052 at * 6 (Mar. 23, 2009), adopting recommendation, No. 3:08–CV–0597–G, 2008 WL 2246955 (N.D. Tex. May 30, 2008) (FTCA complaint of overcrowding barred by discretionary function exception); *Legree v. United States*, 2006 WL 2190580, at *3–5 (N.D. Fla. 2006) (BOP's decisions regarding storage of inmate's personal property fit within discretionary function exception); *Smith v. Snyder*, 2006 WL 379516 (E.D. Ky. 2006) (claim challenging prison's response to accumulation of bird feces on prison grounds falls within exception).

Here, Mr. Perez Alvarez's complaint is not specific, but he generally claims that FC-FCI staff breached a general duty of care that the BOP owed him by failing to provide

a ladder for him to access his bunk-bed. (#1) This claim falls within the discretionary function exception to the FTCA, and the Court lacks subject matter jurisdiction to entertain it.

Additionally, to maintain a claim under the FTCA, Mr. Perez Alvarez must establish that the State of Arkansas imposes a similar duty on a private individual or private entity. See *Barnes*, 448 F.3d at 1066 (affirming dismissal of action filed under the Act where Missouri law imposed no duty to inspect and advise even though federal regulation imposed such a duty). Here, Mr. Perez Alvarez has not alleged facts to meet this burden.

Finally, even if Mr. Perez Alvarez could establish a duty under Arkansas law, he has failed to allege the injury he suffered was caused by his fall. As set forth above, Dr. Ballom testified that the fall from the bunk-bed did not cause any of the abnormalities to his left ankle revealed by x-ray or the MRI. (#44-1)

For these reasons, the Court recommends granting the United States of America's motion for summary judgment (#42) and dismissing all of Mr. Perez Alvarez's claims against it.

## IV. **CCS's Motion to Dismiss:**

CCS has moved to dismiss Mr. Perez Alvarez's claims against it for lack of supplemental jurisdiction. (#40) Under 28 U.S.C. § 1367(c) a district court may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or

claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

If the Court adopts the recommendation granting the motion for summary judgment filed by United States, the claims over which the Court has original jurisdiction will be dismissed. The remaining supplemental claims against CCS require the application of Texas state law, and the events giving rise to the claims occurred in Texas. The employees with relevant information regarding Mr. Perez Alvarez's claims are also in Texas. For these reasons, the Court recommends declining to exercise discretionary supplemental jurisdiction over Mr. Perez Alvarez's claims against CCS and granting its motion to dismiss for lack of jurisdiction. 28 U.S.C. §1367(c)(3).

## V.    **Conclusion**:

The Court recommends that Chief Judge Miller GRANT the motion for summary judgment filed by the United States (#42) and DISMISS Manuel DeJesus Perez Alvarez's claims against the United States, with prejudice. The Court further recommends that Judge Miller decline to exercise supplemental jurisdiction over Mr. Perez Alvarez's claims against Correct Care Solutions, LLC; that he GRANT the motion to dismiss claims against Correct Care Solutions, LLC for lack of supplemental jurisdiction (#40); but that he dismiss Mr. Perez Alvarez's claims against Correct Care Solutions, LLC, without prejudice.

DATED this 5th day of February, 2019.

_____
UNITED STATES MAGISTRATE JUDGE